IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICARDO LARIOS-TRUJILLO, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL ACTION NO. |
| | :: | 1:08-CR-446-TCB-LTW-1 |
| | :: | |
| UNITED STATES OF AMERICA, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:12-CV-416-TCB-LTW |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant challenges under 28 U.S.C. § 2255 his convictions in this Court for drug crimes. (Doc. 359.)[1] Movant, pro se, filed his § 2255 motion and a supporting brief. (*Id.*; Doc. 369.) Respondent filed a brief opposing the motion. (Doc. 387.)

The Court then appointed counsel for Movant and held an evidentiary hearing regarding one of Movant's claims (the "§ 2255 Hearing"). (Doc. 416 (transcript of hearing).) That claim was that Samuel Fenn Little, Movant's trial counsel, rendered ineffective assistance in connection with Movant's desire to plead guilty. Movant and Little testified at the § 2255 Hearing, and documentary evidence was introduced. The parties filed post-hearing briefs on the plea claim. (Docs. 419, 420.)

---

[1] All citations to the record are to case number 1:08-cr-446-TCB-LTW.

The undersigned has reviewed all the § 2255 filings, the transcript of the § 2255 Hearing, and the underlying record in this case. For the reasons discussed below, the undersigned recommends that the § 2255 motion be denied.

## I.   Background

In November 2008, a grand jury indicted Movant and others on two counts. (Doc. 16.)  Count one charged Movant with conspiring to possess more than five kilograms of cocaine with intent to distribute it, while count two charged him with possessing more than five kilograms of cocaine with intent to distribute it. (*Id.* at 1-2.)

In September 2009, the grand jury issued a superseding indictment. (Doc. 161.) Count one of the superseding indictment charged Movant with the same conspiracy charged in count one of the original indictment, while count two charged attempted – rather than actual – possession of cocaine with intent to distribute it. (*Id.* at 1-2.)

In November 2009, the Court held a trial of Movant and two co-defendants. The jury found Movant guilty of both counts in the superseding indictment. (Doc. 225.)  The Court sentenced Movant to twenty years' imprisonment, five years' supervised release, and a special assessment. (Doc. 243.) Little represented Movant from arraignment through sentencing.

2

On appeal, Movant challenged the Court's admission at trial of evidence that he committed uncharged drug crimes a few years before the crimes charged in this case. A co-defendant who pled guilty in this case, Alexander Acher, testified at Movant's trial about the prior drug deals. The appeals court held that the Court abused its discretion in allowing that testimony, but that the error was harmless "in light of the substantial evidence [of guilt] presented against" Movant. *United States v. Larios-Trujillo*, 403 F. App'x 442, 445 (11th Cir. 2010). The appeals court affirmed Movant's judgment of conviction. *Id.* Attorney E. Vaughn Dunnigan represented Movant on appeal. (Doc. 264.)

Movant asserts the following claims in his § 2255 motion:

1. Little rendered constitutionally ineffective assistance;

2. Dunnigan rendered constitutionally ineffective assistance;

3. The Court erred in admitting at trial evidence of Movant's past unproven drug crimes; and

4. No one informed Movant of his right to speak with the Mexican Consulate and he was not permitted to speak with the Consulate.

(Doc. 359 at 4-8.)

3

## II.   Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack, i.e., there is a fundamental defect that results in a complete miscarriage of justice. 28 U.S.C. § 2255(a); *United States v. Addonizio*, 442 U.S. 178, 185 (1979). "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

### A.   Procedural Bars To Review

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004). "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] . . . from raising his claims on direct appeal and that this factor cannot be fairly [attributed] to [his] own

4

conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004). "Actual prejudice" requires a movant to show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997).

A court also may review a claim in a § 2255 motion that was not raised on appeal if "a constitutional violation has probably resulted in the conviction of one who is actually innocent" and thus would result in a fundamental miscarriage of justice absent review. *Lynn*, 365 F.3d at 1234-35 (quotation marks omitted). "Actual innocence means factual innocence, not mere legal innocence." *Id.* at 1235 n. 18 (quotation marks omitted). In this regard, a § 2255 movant must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

A claim "decided adversely to a defendant on direct appeal [] cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quotation marks omitted). "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982).

5

B.    Ineffective Assistance Of Counsel

To establish ineffective assistance of counsel, a § 2255 movant must show that counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). A court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). Courts will not find a lawyer's performance deficient unless the movant establishes that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an

6

insufficient showing on one." *Id.* at 697.

## III.   Analysis

A summary of the evidence presented at trial will place Movant's claims, particularly his claim that Little was ineffective, in context.  That summary follows.

Respondent presented the following key witnesses at trial: (1) Dante Jackson, the case agent with the Federal Bureau of Investigation ("FBI"); (2) Steven Ledgerwood, the Immigration and Customs Enforcement ("ICE") agent who worked with Jackson on the case; (3) co-defendants Alexander Acher and Rigoberto Delgado-Orozco, who pled guilty before trial and testified against Movant; (4) Andres Garcia, the FBI's confidential informant who set up the sale of six kilograms of cocaine to Movant that was the basis for the charges in this case; (5) Luis Miranda, ICE's confidential informant who bought drugs from Ramon Cortez, Movant's nephew, and a co-defendant at Movant's business; and (6) Anibal Gonzalez, the undercover FBI agent who pretended to be Garcia's boss and the transporter of the cocaine Movant agreed to buy.  (Docs. 278 through 282.)  Movant presented three witnesses at trial: (1) Anthony Mangiacotti, Jr., a homebuilder in Massachusetts who taught Movant how to repair and sell houses; (2) Michael W. Mullen, a financial advisor who consulted with Movant on Movant's business and testified that most of the business's

7

transactions were conducted in cash; and (3) Anthony Tobin, a federal prisoner who testified that he met Acher in prison and discussed Acher's case with him. (Docs. 283, 284.)

The trial evidence showed that Movant operated a business called Monster Car Audio ("MCA") with his brother and nephew. In 2007, ICE received an anonymous tip via telephone that drugs were being trafficked through MCA. In February 2008, Miranda met Movant and others at MCA and discussed, in recorded conversations, the purchase of kilogram quantities of cocaine from Cortez. The FBI intercepted several telephone calls involving Movant, including calls in May 2008 where Movant and Cortez arranged a sale of cocaine to a third party. Surveillance of Cortez corroborated the telephone discussions and the sale of cocaine. Miranda purchased 52.4 grams of cocaine from Cortez at MCA on February 5, 2008, and purchased another 49.9 grams from Cortez one month later.

Garcia was an MCA customer who, at the FBI's direction, recorded conversations about drug trafficking with Movant and others at MCA in 2008. In April 2008, Movant agreed to arrange for installation of a compartment for concealing cocaine in a vehicle owned by Garcia's purported drug source, Gonzalez. In May 2008, Garcia and Gonzalez discussed the details of that job with Movant at MCA.

AO 72A
(Rev.8/82)

Garcia delivered the vehicle to Movant a couple of weeks later, and the FBI intercepted telephone conversations where Movant arranged for Delgado to install the hidden compartment. Movant delivered the vehicle with the hidden compartment to Garcia and Gonzalez in June 2008.

The FBI's wiretaps also revealed drug transactions with which Movant was involved in Summer 2008. The activity culminated in October 2008 when Movant, his brother, Garcia, and Gonzalez met at MCA and discussed a person in Miami who could provide cocaine from Columbia. Movant made arrangements for his brother to travel to Miami with Garcia to meet the drug supplier. Gonzalez purchased round-trip airfare for the trip, but cancelled the trip after Movant's brother agreed to go.

Movant agreed to buy six kilograms of cocaine from the Miami supplier, with the deal to take place at MCA. Movant and Delgado, Movant's usual drug supplier, asked Acher, who lived in Massachusetts, to bring the cash for the transaction to Atlanta. Acher arranged for his aunt, Jeanne Morris, to transport the cash to Atlanta in a concealed compartment in a car. Acher flew to Atlanta, where Movant picked him up at the airport. Morris later met them with the cash. Garcia finalized the deal in several telephone conversations with Movant in October 2008.

9

On November 3, 2008, Garcia and Gonzalez brought the cocaine to MCA and met with Movant, his brother, and Acher. Movant produced a box containing the money for the cocaine. Movant, his brother, and Acher followed Garcia and Gonzalez outside to get the cocaine, where they were arrested. The FBI searched Movant's home later that day and found digital scales. Other searches uncovered prepaid mobile phones Acher purchased for his and Movant's use in connection with the drug deal, the car in which Morris transported the money from Massachusetts, and wrapping and dog repellant used to conceal the money in the car.

Movant confessed to Jackson and Ledgerwood in an interview on November 3, 2008. The interview was not recorded, but both agents testified about it at trial. Movant disclosed to the agents his prior purchases of marijuana and cocaine from Delgado and his prior drug trafficking with Acher. Movant further disclosed that he reestablished contact with Acher in 2008 and agreed to find a cocaine source for Acher. The evidence showed that Movant intended Garcia and Gonzalez's connections in Miami to be that source, leading to the attempted transaction for which Movant was arrested.

A.     Ground One

Movant contends in ground one that Little rendered ineffective assistance by:

10

(1) telling Movant before trial that the case would go better if Movant paid him and becoming angry when Movant relayed that to the Court; (2) failing to prepare and present an adequate defense at trial; (3) refusing to send Movant his case file; and (4) failing to inform Movant of any plea deals and to advise Movant on pleading guilty without a deal. (Doc. 359 at 4.)

   *1.*  *The Alleged Conflict Of Interest And Refusal To Provide Case File*

  Movant contends that Little asked Movant to pay him for his services, despite the government paying Little for his representation of Movant. That is the basis for Movant's claim that Little had a conflict of interest.

  It is undisputed that Movant and Little had a strained relationship. In June and October 2009, before the November trial, Movant sent the Court letters alleging that Little was ineffective and requesting new counsel. (Docs. 121, 184.) Movant wrote in the June 2009 letter that Little did not have his best interest in heart and that Little had told him that Little was "also a paid attorney if I would like[] to hire [Little]." (Doc. 121 at 1.) The Court inquired into Movant's issues with Little at a hearing on June 11, 2009. (Doc. 122.) Movant withdrew his request for new counsel at that hearing. (*Id.*)

11

In his October 2009 letter, Movant again requested new counsel, alleged that Little was not following Movant's instructions, and alleged that Little was making "blunderings" in the case. (Doc. 184.)  Movant did not mention any conflict of interest or any demand by Little for money.  (*Id.*)  At the pretrial conference on October 30, 2009, the Court denied Movant's request for new counsel.  (Doc. 192.)

After trial, Movant, pro se, filed a motion for new trial in which he contended that Little had rendered ineffective assistance and had a conflict of interest.  (Doc. 241.)  Movant stated in his motion that he "had already filed previous on Attorney Little for soliciting funds and then again for not properly investigating his case." (*Id.* at 1.)  The Court denied Movant's motion because it was not timely filed.  (Doc. 298.)

A criminal defendant's Sixth Amendment right to counsel is violated when his lawyer has an actual conflict of interest that adversely affects the lawyer's performance. *Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Schwab v. Crosby*, 451 F.3d 1308, 1322 (11th Cir. 2006). "[T]he mere possibility of conflict does not constitute a Sixth Amendment violation." *Ferrell v. Hall*, 640 F.3d 1199, 1244 (11th Cir. 2011). "To satisfy the 'actual conflict' prong, a defendant must show something more than a possible, speculative, or merely hypothetical conflict." *Reynolds v. Chapman*, 253 F.3d 1337, 1342-43 (11th Cir.

12

2001) (quotation marks omitted).   The defendant must show that there were "inconsistent interests" by "point[ing] to specific instances in the record to suggest an actual conflict or impairment of their interests." *Id.* at 1343. "To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Id.*

If a defendant demonstrates both an actual conflict and adverse affect on the representation, he need not show a reasonable probability that his case would have turned out differently absent his counsel's ineffectiveness, i.e., he need not show prejudice. *Mickens*, 535 U.S. at 166, 173 (noting that the standard "requires proof of effect upon representation but (once such effect is shown) presumes prejudice"); *Cuyler*, 446 U.S. at 349-50 ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.").

Movant has shown nothing more than the speculative possibility that Little had a conflict of interest based on his purported demand for money from Movant. Notably, Movant provided no details about Little's purported demand, e.g., dates, the

13

amount of money, or the circumstances of the communications, in either his pre-trial letters, his motion for new trial, or his § 2255 filings. When Movant first informed the Court of a potential conflict of interest, he did not say that Little had demanded money, but only that Little had told him that he could hire Little like paying clients did. (Doc. 121 at 1.) At the hearing a few days later, not only did the Court find no conflict of interest, Movant withdrew his request for new counsel.

In short, Movant has not pointed to any "specific instances in the record to suggest an actual conflict or impairment of [] interests." *See Reynolds*, 253 F.3d at 1343. Nor has Movant described how Little's purported demand for money adversely affected his representation of Movant. Accordingly, Movant's conclusory claim regarding a conflict of interest does not support a finding that he received ineffective assistance of counsel.

Movant's complaint that Little has refused, since trial and sentencing, to provide Movant with Little's case file also provides no basis for relief under § 2255. Movant has not described, much less shown, how Little's refusal to provide his records prejudiced Movant. Little did not represent Movant beyond sentencing. Movant has not shown that Dunnigan did not have records needed for appeal or, even if she did not, that the appeal was adversely affected. Movant's generalized, non-

14

specific complaints do not establish ineffective assistance of counsel.

2. *The Alleged Inadequate Defense*

Movant complains that Little should have better prepared for trial, called an additional witness at trial, better cross-examined Respondent's witnesses at trial, and presented an entrapment defense. The latter complaint is easily disposed of because Little presented an entrapment defense. Little argued entrapment to the jury in both his opening statement and closing argument and persuaded the Court to instruct the jury on the entrapment defense. (Doc. 278 at 77; Doc. 284 at 20-21, 82-83.)

Movant contends that Little should have more closely examined the written statements of Delgado, Acher, and Morris so that he could have more effectively cross-examined Delgado and Acher at trial (Morris did not testify at trial). (Doc. 369 at 17-18.) But the things Movant identifies in those statements are not inconsistent with Delgado's and Acher's trial testimony and are not inconsistent with the overwhelming evidence of Movant's participation in the conspiracy to buy cocaine in late 2008.

For example, Movant points to an event in 2003 that Delgado described in his written statement and an unrelated event in 2007 that Morris described in hers. (*Id.*) Movant concedes that the two stories are "innocuous and seem[] to have no relevant

15

value to the case," but argues that they have enough "interesting similarities" to show that Acher was in charge of the drug conspiracy and that Movant had little to no role in it. (*Id.*) The events at issue concern the use of concealed compartments in Nissan Altima cars to transport money for drug transactions. While those events are somewhat similar to Morris' transport of the money for the November 2008 cocaine transaction in a Ford sport utility vehicle, evidence of those events would not have undermined or contradicted the evidence that Movant agreed to buy cocaine in 2008 with money to be supplied by Acher. Movant has not shown that no competent lawyer would have chosen not to present evidence from the written statements at trial or that there is a reasonable probability that presentation of such evidence would have changed the outcome of the trial.

Movant contends that Little should have presented Rafael Lopez as a witness at trial to impeach Acher's testimony. (Doc. 369 at 20.) Movant says Lopez would have testified that Acher lied when he said in his written statement to police that he bought a shotgun from Lopez. (*Id.*) That issue is immaterial because the jury did not hear about Acher's statement regarding the shotgun. No evidence was presented at trial of any guns being used or involved in the drug crimes at issue in this case. Little was not ineffective for not presenting Lopez as a witness. *See Chaney v. Sec'y, Fla.*

16

*Dep't of Corr.*, 447 F. App'x 68, 70 (11th Cir. 2011) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision that seldom, if ever, serves as grounds to find counsel's assistance ineffective." (quotation marks omitted)).

Movant also contends that Little should have more thoroughly cross-examined Tobin, the federal prisoner who befriended Acher in prison. (Doc. 369 at 20-21.) Movant says that Tobin could have testified about Acher's statements to Tobin that it was Acher's "plan to blame [Movant] and his brother so that Acher could receive less time." (*Id.* at 20.) Decisions on how to cross-examine witnesses and to what extent are strategic ones that do not violate the Sixth Amendment right to counsel simply because a defendant disagrees with the lawyer's decision. *See Dorsey v. Chapman*, 262 F.3d 1181, 1185-86 (11th Cir. 2001). "A strategic decision by defense counsel will be held to constitute ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987) (quotation marks omitted).

Little thoroughly cross-examined Acher in an attempt to show Acher was the ringleader. Little elicited testimony from Acher to support that contention. For example, Acher admitted that he had sold thousands of pounds of marijuana and several hundred kilograms of cocaine leading up to his dealings with Movant in 2008.

17

(Doc. 280 at 142.)  Acher also admitted, under questioning by co-defendants' counsel, that he had been in the drug business a long time, was buying cocaine in bulk in 2008, and personally brought Morris into the drug business. (*Id.* at 146-50.) Finally, Acher admitted on cross-examination that his motivation for testifying at trial was to avoid a long prison sentence for himself. (*Id.* at 154-55.)  It is not probable that eliciting essentially the same information from Tobin – that Acher planned to blame Movant and Movant's brother so he would receive less prison time – would have changed the jury's verdict.  All three defense lawyers put Acher's criminal conduct and personal motivations front and center at trial.

Movant's claim that Little should have more thoroughly cross-examined Respondent's witnesses is grounded in his argument that he should not have been convicted of conspiracy to buy cocaine with the intent to distribute it because he and Acher simply had a "buyer-seller relationship" and he was simply one of many people with whom Acher conducted drug transactions.  (Doc. 369 at 18-19.)  Movant contends that while he may have known of Acher's vast drug organization, he had no "stake or partnership" in it.  (*Id.* at 19.)

It was not necessary for Movant to have had any stake in Acher's drug organization or to have frequently dealt drugs with Acher to be found guilty of

18

conspiring to buy cocaine from undercover agents in November 2008 with the intent to distribute it. To convict Movant of the conspiracy charge, Respondent had to prove that there was an illegal agreement to distribute cocaine and that Movant knowingly and voluntarily participated in that agreement. *See United States v. Johnson*, 379 F. App'x 964, 969 (11th Cir. 2010). The evidence presented at trial amply supported the jury's finding that Movant participated in such a conspiracy. There was evidence of not only the November 2008 cocaine purchase, but of numerous other cocaine transactions out of MCA in which Movant was involved and often directed. *See id.* at 970 (rejecting argument that evidence proved "only buyer-seller relationships and not an agreement to distribute drugs" where there was evidence of several similar drug transactions by a related group of people); *United States v. Gonzalez*, 940 F.2d 1413, 1422 (11th Cir. 1991) ("There is no requirement that every member of the conspiracy participate in every transaction . . . nor must the evidence show that each conspirator knew the others or the details of each venture making up the conspiracy."). Movant has not shown a reasonable probability that he would have been acquitted of the conspiracy charge had Little better examined witnesses or presented more evidence incriminating Acher or others.

Finally, Movant has shown no prejudice from Little's decision not to present

19

evidence on the remaining issues Movant raised in ground one of his § 2255 motion.

Those issues are: (1) law enforcement's report of an October 9, 2007 interview of

Delgado contains no mention of a tip initiating the criminal investigation, but only of

Movant's arrest on that date for assault; and (2) statements in ICE records that Movant

was involved in alien smuggling and that an unrelated person named Belia Larios was

arrested in December 2003 with a large amount of cash in her possession. (Doc. 369

at 14-17.)   Given the trial evidence discussed above, including Movant's own

confession shortly after his arrest on November 3, 2008, it is not reasonably probable

that Movant would have been acquitted had those alleged "contradictions or partial

truths" in law enforcement records been exposed at trial. (*See* Doc. 369 at 15.)

A few days ago, the U.S. Supreme Court again emphasized that criminal

defense "counsel should be 'strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment'" and reminded courts to faithfully apply the "'strong presumption that

counsel's conduct [fell] within the wide range of reasonable professional assistance.'"

*Burt v. Titlow*, No. 12-414, 2013 WL 5904117, at *6 (U.S. Nov. 5, 2013) (quoting

*Strickland* in case involving claim that defendant went to trial, rather than pleading

guilty, because of lawyer's ineffective assistance).   Movant has not overcome that

20

strong presumption with regard to Little's assistance in Movant's defense and has not shown prejudice from Little's alleged errors.

### 3.   *The Alleged Ineffectiveness Regarding A Guilty Plea*

Movant claimed in his § 2255 Motion that Little "failed to inform me of any plea deals." (Doc. 359 at 4.) In the brief Movant filed three months later, he expanded that claim to include an allegation that he "continually asked Attorney Little for a plea" and suggested that Little prevented him from entering a non-negotiated plea to the original indictment. (Doc. 369 at 23-25.) Movant did not identify anything that Little did to prevent him from entering a non-negotiated plea. (*Id.*) Movant and Little testified at the § 2255 Hearing about Movant's plea claim.

When a § 2255 movant contends that he would have pled guilty if he had received proper advice from his counsel, *Strickland*'s standard applies. The movant "'must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'" *Coulter v. Herring*, 60 F.3d 1499, 1504 & n.7 (11th Cir. 1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The U.S. Supreme Court's recent decisions in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) and *Missouri v. Frye*, 132 S. Ct. 1399 (2012) modified that analytical framework for cases where prosecutors offer a plea bargain.

21

It is undisputed that Respondent never offered Movant a plea bargain, however, and no evidence of any plea offer by Respondent was presented at the § 2255 Hearing. (*See* Doc. 416 at 52, 64-65 (Movant testifying that Respondent never offered a plea deal).) As discussed below, *Lafler* and *Frye* thus do not apply here.

The criminal defendants in *Lafler* and *Frye* were offered plea bargains, but they did not accept the offers because, they claimed, they received ineffective assistance of counsel. *Lafler*, 132 S. Ct. at 1383; *Frye*, 132 S. Ct. at 1404.  The defendant in *Lafler* rejected the prosecution's offer to drop two charges in exchange for a guilty plea to the remaining charges and was convicted of all charges at trial. *Lafler*, 132 S. Ct. at 1383.  The defendant in *Frye* allowed the prosecution's plea offer to lapse because his counsel did not inform him of the offer, and he later pled guilty without a plea deal. *Frye*, 132 S. Ct. at 1404.

The question presented in *Frye* was "whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both." *Id.* at 1408. The Supreme Court answered that question in the affirmative, and then held that "[t]o show prejudice . . . where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they

22

would have accepted the earlier plea offer" and that the earlier plea offer "would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.* at 1408-09. The Supreme Court noted that "[t]his application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*" for claims of ineffective assistance in connection with guilty pleas. *Id.* at 1409.

The issue in *Lafler* was how a defendant satisfies *Strickland*'s prejudice prong when he rejects a plea offer on advice of counsel. *Lafler*, 132 S. Ct. at 1383, 1385. The Supreme Court held that in such a case the defendant must show that, but for his counsel's bad advice, "there is a reasonable probability that the plea offer would have been presented to the court [i.e., the defendant would have accepted it and the prosecution would not have withdrawn it] . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385. "If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." *Id.* at 1387; *see United States v. Rivas-Lopez*, 678 F.3d 353, 357 & n.23 (5th Cir. 2012) (describing *Lafler* as "holding that the Sixth Amendment protects against, and remedies, the

23

rejection of favorable plea offers for want of effective assistance of counsel").

Because Respondent extended no plea offer to Movant, *Frye* and *Lafler* do not apply. Movant's plea claim turns on whether Little was deficient in somehow preventing Movant from pleading guilty without a plea deal and whether Movant was prejudiced by any deficient performance. *Strickland* provides the framework for analyzing that claim.

As noted above, Movant never explained before the § 2255 Hearing how Little prevented him from pleading guilty without a plea deal. Even in Movant's post-hearing brief, Movant offered only that Little "persisted in a trial-or-plea agreement mindset, . . . fail[ed] to present [Movant] with all of the options available to him," and failed "to focus on sentencing mitigation rather than fruitlessly contesting guilt." (Doc. 419 at 9.)

Based on the preponderance of the evidence, Movant has not established that Little did anything to prevent Movant from pleading guilty or failed to properly advise Movant on the option of pleading guilty without a plea agreement. The undersigned further finds from the evidence that it is not reasonably probable that Movant would have pled guilty without a plea agreement regardless of what Little did or did not do. Movant has not shown deficient performance or prejudice.

24

As to Little's performance, the undersigned credits his testimony that he discussed with Movant on multiple occasions the possibility of a guilty plea and told Movant early in the case that he was likely facing a twenty-five year sentence if he was convicted at trial. (Doc. 416 at 10-12, 28-29.) Little conveyed to Movant and Movant's wife the weight of the evidence against Movant. Little wrote Movant's wife that Little was "very worried that some of the other evidence will kill our defense," that he "hope[d] that [Movant] realizes the risk he is taking," and that "[i]f [Movant] is convicted, I would expect that he will get more time than [his brother" who faced a mandatory minimum sentence of twenty years. (Doc. 416 Ex. 2 at 2; *Id.* at 53-54 (Movant testifying that he often communicated with Little through his wife).) Little wrote that just a few weeks before trial, but the undersigned finds from the evidence that Little communicated to Movant the strong evidence against him and the risks of trial beginning soon after the original indictment issued.

Little's testimony, the records of Little's communications with the lead prosecutor on this case, and the records of Little's visits with Movant credibly show that Little competently pursued a plea deal for Movant and properly advised Movant of his plea options. (*Id.* at 9-19, 23, 27, 31, 34-38 & Exs. 3, 5.) Movant's testimony at the § 2255 Hearing that Little pushed him to go to trial and told him he had no other

option absent a plea deal is not credible.

Even if Movant had shown that Little was deficient in advising him about plea options, Movant has not shown that he would have pled guilty with better representation. In two letters filed with the Court before trial, Movant expressed his displeasure with Little, but never said that he wanted to plead guilty or that Little was preventing him from doing so. *See supra*, Part III.A.1. Nor did Movant express anything of the sort at the two pre-trial hearings where Movant's letters were discussed. *See id.* Nor did Movant mention it in his post-trial motion complaining of Little's representation. *See id.*

Movant had no qualms about telling Little, the Court, and anyone else who would listen that he felt Little was ineffective, had a conflict of interest, and should be replaced on multiple occasions as the trial approached. Yet Movant never said that Little was standing in the way of his admission of guilt via a non-negotiated plea until over two years after trial when he sought relief from his judgment of conviction under the last means available to him – § 2255. (*See* Doc. 416 at 62.)

Movant's consistent position of innocence further precludes him from showing that he would have pled guilty. As late as September 2009, two months before trial, Movant wrote to Little that he was "innocent and not guilty of all the charges." (Doc.

26

416 Ex. 6; Doc. 411 at 15.) One month before trial, Movant's wife wrote to Little that Movant "would not be risking his life if he didn't believe in his innocence." (Doc. 416 Ex. 2 at 1.) Movant even maintained his innocence at the § 2255 Hearing. (*Id.* at 55-56.) Movant has not shown that he would have pled guilty absent Little's allegedly deficient representation. *See Oliver v. United States*, 292 F. App'x 886, 887-88 (11th Cir. 2008) (rejecting ineffective assistance claim where § 2255 movant "maintained his innocence throughout trial and during his sentencing, which undermines his claim that he would have consented to a plea agreement"); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("The district court could have concluded from the record that [the § 2255 movant] did not establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement."); *Lamons v. United States*, No. 4:03-cr-046-1-RLV, 2011 WL 3875996, at *9 (N.D. Ga. Aug. 10, 2011) (finding no prejudice where "the [§ 2255] movant's conduct throughout these proceedings shows that he did not want to plead guilty . . . [as] he took the stand in the first trial and denied any culpability"), *adopted by* 2011 WL 3875991 (Aug. 30, 2011).

Movant has not established by a preponderance of the evidence either prong of the *Strickland* test as to his claim that Little's ineffectiveness prevented him from

pleading guilty.  Similar to his other claims of ineffective assistance of trial counsel, Movant is not entitled to relief under § 2255 on his plea claim.

B.    Ground Two

Movant claims that Dunnigan rendered ineffective assistance because she filed the appellate brief without discussing with Movant strategies and arguments to be raised.  (Doc. 359 at 5; Doc. 369 at 29-30.)  Movant contends that he thus had to file a brief himself, which the appeals court rejected.  (*Id.*)  Movant contends that "grounds which [he] saw as immensely important to his case were never addressed" on appeal because of Dunnigan's ineffectiveness, but he does not identify any of those grounds other than "ineffective assistance of trial counsel."  (Doc. 369 at 30.)

As discussed in Part III.A, above, Movant's claim that his trial counsel rendered ineffective assistance lacks merit.  Dunnigan thus was not ineffective for not raising that claim on appeal.  *See Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1145 (11th Cir. 2005) ("[N]onmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel.").  Because Movant identified no other issue Dunnigan should have raised on appeal or otherwise specified how she was ineffective, Movant is not entitled to relief on ground two.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (Section 2255 movant cannot satisfy burden on

28

ineffective assistance claim with "unsupported allegations, conclusory in nature and lacking factual substantiation").

C.     Ground Three

Movant again challenges the Court's admission at trial of evidence of Movant's past bad acts, namely testimony that Movant engaged in drug transactions a few years before the crimes with which he was charged in this case. (Doc. 359 at 7; Doc. 369 at 30-35.) The Eleventh Circuit decided that claim adversely to Movant on direct appeal. *Larios-Trujillo*, 403 F. App'x at 443-45. Movant thus cannot relitigate the claim under § 2255. *See Nyhuis*, 211 F.3d at 1343.

D.     Ground Four

Movant contends that he was denied the right to speak with someone at the Mexican Consulate after his arrest in this case and was not even told of the right. (Doc. 359 at 8; Doc. 369 at 35-37.) According to Movant, that violated Article 36 of the Vienna Convention on Consular Relations ("Article 36"). (*Id.*)

Movant procedurally defaulted this claim by not raising it earlier in this Court or on appeal. Movant contends that he did not raise the claim earlier because no one told him of the right to speak with someone at the Mexican Consulate and because courts have held that Article 36 bestows rights upon only nations, not individuals.

29

(Doc. 369 at 36.)  Movant has not shown cause and prejudice for the default.

Movant's trial and appeal counsel were not ineffective for not telling Movant he had rights under Article 36 because Movant had no enforceable rights under Article 36.  *See Gandara v. Bennett*, 528 F.3d 823, 829 (11th Cir. 2008) ("[T]he announced rule" [from 11th Circuit opinions] is that the Vienna Convention does not confer enforceable individual rights."); *United States v. Longo*, 280 F. App'x 914, 915 (11th Cir. 2008) (rejecting federal defendant's argument on direct appeal that he had judicially enforceable rights under Article 36).  Movant argues otherwise and urges the Court to "fully explore this argument" in light of *Bond v. United States*, 131 S. Ct. 2355 (2011).  (Doc. 369 at 37.)

The issue in *Bond* was "whether a person indicted for violating a federal statute has standing to challenge its validity on grounds that, by enacting it, Congress exceeded its powers under the Constitution, thus intruding upon the sovereignty and authority of the States."  *Bond*, 131 S. Ct. at 2360.  The Supreme Court held that the federal defendant there had "standing to challenge the statute as an infringement upon the powers reserved to the States."  *Id.*  *Bond* involved a defendant's standing to challenge the constitutionality of a federal criminal statute, not whether a defendant has enforceable rights under Article 36.  Thus, *Bond* does not support Movant's claim.

30

Because Movant has not shown that his counsel was ineffective for not raising a claim under Article 36, Movant has not overcome the procedural default of ground four of his § 2255 motion.  Accordingly, the Court cannot review Movant's defaulted claim.  *See Black*, 373 at 1142.

## IV.   Certificate of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

31

AO 72A
(Rev.8/82)

A COA is not warranted here.  Movant has not made a substantial showing that he received ineffective assistance of counsel, and his remaining claims are procedurally barred and meritless.  The resolution of Movant's claims is not reasonably debatable.

## V.     Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence under 28 U.S.C. § 2255 [359] be **DENIED** and that case number 1:12-cv-416-TCB-LTW be **DISMISSED**.  **IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.  Movant's motion to submit documentary evidence at the hearing [411] is **GRANTED NUNC PRO TUNC**

**SO ORDERED & RECOMMENDED** this 19 day of November, 2013.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

32

AO 72A
(Rev.8/82)